UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BANK OF AMERICA, N.A., as successor by merger to LaSalle Bank N.A., in its capacity as Trustee under that certain Indenture, dated as of January 18, 2007 by and among itself, GSC ABS Funding 2006-3g, Ltd., and GSC ABS Funding 2006-3g (Delaware) Corp.,

                Interpleader Plaintiff,

    -against-

MORGAN STANLEY & CO. INC.; AOZORA BANK, LTD.; CEDE & CO., as holder of certain Notes and nominee name of the Depository Trust Company; and DOES 1 THROUGH 50, owners of beneficial interests in the Notes,

                Interpleader Defendants.

10 Civ. 6322 (RJH)

**MEMORANDUM OPINION AND ORDER**

Richard J. Holwell, District Judge:

    Plaintiff Bank of America, N.A. ("BANA") commenced this interpleader action against defendants Morgan Stanley & Co. Inc. ("Morgan Stanley"); Aozora Bank, Ltd. ("Aozora"); Cede & Co. ("Cede"); and Does 1 through 50, owners of beneficial interests in certain notes issued pursuant to an indenture, on August 23, 2010, to resolve competing claims to the proceeds of the liquidation of certain collateral. Now before the Court is BANA's unopposed motion to disburse funds and obtain a discharge, permanent injunction, and attorneys' fees and other expenses. For the reasons that follow, BANA's motion is GRANTED.

1

## BACKGROUND

This action arises out of an indenture (the "Indenture") pursuant to which GSC ABS Funding 2006-3g, Ltd., as Issuer, and GSC ABS Funding 2006-3g (Delaware) Corp., as Co-Issuer, issued certain Notes secured by a pool of Collateral.[1] (Compl. ¶ 9.) BANA, a Delaware corporation with its principal place of business in North Carolina, serves as Trustee under the Indenture. (*Id.* ¶¶ 1, 4.) Defendant Cede is the "nominee name of the Depositary [sic] Trust Company," a New York limited purpose trust company with its principal place of business in New York. (*Id.* ¶ 7.) Cede is the registered holder of record of the Class A-1-a, Class A-1LT-e, Class A-2, and Class B Notes, representing 100% of the aggregate principal amount outstanding on these classes of Notes, and holds the Notes for the ultimate benefit of others, including defendants Morgan Stanley and Aozora. (*Id.*) Morgan Stanley, a Delaware corporation with its principal place of business in New York, is the beneficial owner of all Class A-1LT-e Notes issued pursuant to the Indenture and is the Controlling Class under the Indenture. (*Id.* ¶ 5.) Aozora is a Japanese corporation with its principal place of business in Japan, and the beneficial owner of a portion of the Class B Notes issued pursuant to the Indenture. (*Id.* ¶ 6.) Defendants Does 1 through 50 are beneficial owners of the interests in the Class A-1-a, A-2, and B Notes held by Cede, of whose true identities BANA is ignorant. (*Id.* ¶ 8.)

On February 1, 2008, an Event of Default, as that term is defined in Sections 1.1 and 5.1(h) of the Indenture, occurred. (*Id.* ¶ 11.) On May 8, 2008, Morgan Stanley, as the Controlling Class, directed BANA to accelerate the maturity of the Notes and to liquidate the Collateral pursuant to Sections 5.2(a) and 5.5(a)(ii) of the Indenture. (*Id.* ¶¶ 12, 13.) The Collateral largely consisted of synthetic securities and other assets and accounts, and included all

---

[1] Capitalized terms not defined herein are used as they are in the Interpleader Complaint, which in turn uses those terms with "the meaning ascribed to them in the Indenture." (Compl. at 1 n.1.)

payments received on the synthetic securities and other assets. (*Id.* ¶ 10.) Pursuant to the Indenture, the Issuer had pledged the Collateral to BANA in its capacity as Trustee in order to secure its obligations under the Indenture. (*Id.* ¶ 10.)

On August 18, 2008, BANA notified interested parties of the liquidation and the designation of August 20, 2008, as the date for distribution of the liquidation's proceeds. (*Id.* ¶ 14.) Concerned with a possible ambiguity with respect to how the Indenture dictated distribution of the liquidation proceeds, BANA issued a notice on August 20, 2008, that it would hold in escrow a portion of the liquidation proceeds that it anticipated could be the subject of dispute based on this ambiguity. (*Id.* ¶¶ 16, 17.) The amount of the liquidation proceeds (the "Interpleader Stake") held by BANA in escrow was $1,859,269.29 as of the date of the Complaint. (*Id.* ¶ 22.)

In response to BANA's notice, Morgan Stanley and Aozora communicated to BANA competing interpretations of the Indenture's provisions with respect to the distribution of the liquidation proceeds on June 10, 2010, and May 31, 2010, respectively. (*Id.* ¶¶ 18-20.) Each defendant's interpretation of the Indenture favored the Notes it beneficially owned. (*See id.* ¶¶ 19-20.)

BANA then commenced this action on August 23, 2010. Cede, Aozora, and Morgan Stanley were served on August 25, 2010, August 26, 2010, and August 31, 2010, respectively. (*See* ECF Nos. 3, 4, 5.) Cede filed its Answer on September 23, 2010. (*See* ECF No. 7.) In its Answer, Cede asserted that it had "no beneficial interest in the subject Notes or any other securities identified in the Complaint," that any securities registered in its name were held for the benefit of third parties known as "Participants," who had all been notified of this litigation, and that Cede did "not intend to take an active role in the litigation of this case." (Answer of Cede &

Co. to the Interpleader Complaint ¶¶ 6-8.)  Morgan Stanley filed its Answer on October 29, 2010, advancing its interpretation of the Indenture, which would entitle it to 96.87% of the Interpleader Stake, with the remaining 3.13% to be disbursed to the holders of the Class A-1-a Notes.  (*See* Answer and Cross-Claim of Morgan Stanley ¶ 25.)  Morgan Stanley also filed cross-claims against the other Interpleader defendants based on its interpretation of the Indenture, to which Cede filed an Answer similar to its Answer to the Complaint.  (*See* ECF No. 13.)  Although Aozora was served with Morgan Stanley's cross-claim and with BANA's complaint, it never answered or otherwise responded to either pleading.  (*See* ECF Nos. 5, 12.)

## DISCUSSION

### I. Interpleader Liability

### A. The Two-Stage Process

This interpleader action was filed pursuant to 28 U.S.C. § 1335, which provides the district courts with original jurisdiction over "any civil action of interpleader" involving $500 or more if:

> (1) Two or more adverse claimants, of diverse citizenship . . . , are claiming or may claim to be entitled to such money . . . ; and if (2) the plaintiff has deposited such money . . . into the registry of the court, there to abide the judgment of the court . . . .

28 U.S.C. § 1335(a).  "Normally an interpleader action is concluded in two stages, the first determining that the requirements of § 1335 are met and relieving the plaintiff stakeholder from liability, and the second adjudicating the adverse claims of the defendant claimants . . . ." *New York Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983).  "[T]his bifurcation is not mandatory, however, and the entire action may be disposed of at one time." *Id.*  Combining the two stages of the interpleader action is appropriate where, as here, only one interpleader defendant asserts a claim to the fund in question.  *See id.*; *Life Ins. Co. of N. Am. v. Hale*, No. 08-

4

cv-02551-RPM-KMT, 2009 WL 2843270, at *2-3 (D. Colo. Aug. 31, 2009) (resolving both stages at one time).  Accordingly, the Court will consider both stages in this opinion.

### B. First Stage

Aside from the jurisdictional requirements of section 1335, "[t]he primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder (the so-called 'first stage' of interpleader) is whether the stakeholder legitimately fears multiple vexation directed against a single fund."  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1704 (3d ed. 2001); *accord Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 178 (S.D.N.Y. 2002) ("To determine whether an interpleader action is appropriate, therefore, a court must assess whether the stakeholder 'legitimately fear[s] multiple [liability] directed against a single fund, regardless of the merits of the competing claims.'" (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98 Civ. 1756, 2001 WL 11070, at *5 (S.D.N.Y. Jan. 4, 2001))).  The "claimants must be 'adverse' to each other," 7 Wright, et al., *supra*, § 1705; *accord Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995), as "[t]he function of interpleader is to resolve claims for designated assets based on mutually exclusive theories." *Ashton v. Josephine Bay Paul and C. Michael Paul Found.,* 918 F.2d 1065, 1070 (2d Cir. 1990).

Here, the threshold jurisdictional inquiries are satisfied.  Aozora and Morgan Stanley represent diverse claimants, as Aozora is a Japanese corporation with its principal place of business in Japan, whereas Morgan Stanley is a Delaware corporation with its principal place of business in New York, and "only 'minimal diversity,' that is, diversity of citizenship between two or more claimants," is required under the statute.  *State Farm Fire & Cas. Co. v. Tashire*,

386 U.S. 523, 530 (1966).  The Interpleader Stake at issue here is more than the jurisdictional amount of $500, and BANA deposited the stake with the Court on June 13, 2011.

It is clear that Morgan Stanley and Aozora represent adverse claimants, as they advanced mutually exclusive interpretations of the Indenture's distribution provisions.  (*Compare* Compl. ¶ 19 *with id.* ¶ 20.)  Although Aozora has since failed to answer or otherwise defend this action, its "subsequent default[] d[oes] not make the interpleader action inappropriate but merely expedite[s] its conclusion by obviating the normal second stage."  *New York Life Ins. Co.*, 700 F.2d at 95; *see also Cayuga Constr. Corp. v. United States*, No. 91 Civ. 4883 (LAP), 1993 WL 258738, at *1 (S.D.N.Y. July 6, 1993) ("Cayuga itself sufficiently discerned the existence of a claim by INA to the fund at the institution of this action so that it alleged such in the complaint.  The subsequent dismissal of INA is of no consequence." (internal citations omitted)).  Aozora and Morgan Stanley's competing interpretations of how the Interpleader Stake ought to be distributed therefore exposed BANA to the threat of multiple liability, and an interpleader action is appropriate.

### C. Second Stage

As for adjudicating the adverse claims of the defendant claimants, "[t]he failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the *res* can be viewed as forfeiting any claim of entitlement that might have been asserted."  *Gen. Accident Group v. Gagliardi*, 593 F. Supp. 1080, 1089 (D. Conn. 1984); *accord Life Ins. Co. of N. Am.*, 2009 WL 2843270, at *3; *see also Nationwide Mut. Fire Ins. Co. v. Eason*, 736 F.2d 130, 133 n.4 (4th Cir. 1984) ("[I]f all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund."); *New York Life Ins. Co.*, 700 F.2d at 95 (observing that defaults of other claimants "obviat[ed] the normal second stage").  Here, Cede

has asserted that it will not take an active role in this litigation, Aozora has failed to answer or otherwise defend this action, and none of the Doe claimants have asserted a claim. Accordingly, the Interpleader Stake shall be disbursed as requested by Morgan Stanley, the sole defendant to assert a claim.

### D. Relief

In addition to the disbursement of the Interpleader Stake, BANA requests that it be discharged from this action. "[28 U.S.C. §] 2361 authorizes a district court to discharge the stakeholder in any civil interpleader action from further liability to claimants." *Mendez v. Teachers Ins. and Annuity Ass'n and College Ret. Equities Fund*, 982 F.2d 783, 787 (2d Cir. 1992). That section provides that a "district court shall hear and determine the case, and may discharge the plaintiff from further liability . . . ." 28 U.S.C. § 2361. "Before discharging a stakeholder under § 2361, the court must first determine whether the requirements of 28 U.S.C. § 1335 (1988) have been met." *Mendez*, 982 F.2d at 787. Once those requirements are met, where a neutral stakeholder, such as BANA, asserts no claim to the stake, "[t]he court should readily grant discharge of the stakeholder, unless it finds that the stakeholder may be independently liable to a claimant or has failed to satisfy the various requirements of interpleader, including, when required, deposit of the stake." 4 James Wm. Moore et al., *Moore's Federal Practice* § 23.03[2][a] (3d ed. 2005). The Court has found above that the requirements of 28 U.S.C. § 1335 are met, including deposit of the stake, and there is no suggestion here that BANA is independently liable to any claimant. Accordingly, BANA's request to be discharged is granted.

BANA also requests a permanent injunction restraining the Interpleader Defendants from commencing any suits concerning entitlement to the Interpleader Stake. In addition to allowing

a district court to discharge an interpleader plaintiff, section 2361 allows a district court to "enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court" and to "make the injunction permanent." 28 U.S.C. § 2361. "Section 2361 enables a party meeting the requirements of Section 1335 to obtain a restraining order without following the procedures set forth in Rule 65, Fed. R. Civ. P., which normally governs the issuance of injunctive relief." *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992). In situations such as this one "where a stakeholder, faced with rival claims to the fund itself, acknowledges . . . his liability to one or the other of the claimants," it is "reasonable and sensible that interpleader . . . should also protect the stakeholder from vexatious and multiple litigation," and therefore "suits sought to be enjoined" in such situations "are squarely within the language of 28 U.S.C. § 2361." *Tashire*, 386 U.S. at 534. Such "[a]n injunction against overlapping lawsuits obviously is desirable to ensure the effectiveness of the interpleader remedy." 7 Wright et al., *supra*, § 1717; *accord Sotheby's, Inc.*, 802 F. Supp. at 1066 ("An injunction against overlapping lawsuits is desirable to insure the effectiveness of the interpleader remedy. It prevents the multiplicity of actions and reduces the possibility of inconsistent determinations."); 4 Moore et al., *supra*, § 22.04[5][a] ("Absent self-restraint of the parties, the only way to ensure that there will not be overlapping litigation is to have the interpleader court issue an injunction against other proceedings.").

    Here, a permanent injunction restraining the Interpleader Defendants from continuing or bringing any suits concerning the Interpleader Stake is necessary to protect BANA from a multiplicity of actions and to ensure the effectiveness of the interpleader relief granted here. BANA's request is therefore granted.

**II. Attorneys' Fees**

Sections 6.7(a)(ii) and (iii) of the Indenture require the Issuer to reimburse BANA for "all reasonable expenses, disbursements and advances" incurred in enforcing the provisions of the Indenture and to indemnify BANA for "any loss, liability or expense (including, without limitation, reasonable attorney fees and expenses)" that "aris[e] out of or in connection with the acceptance or administration of this trust, including the costs and expenses of defending themselves against any claim or liability in connection with the exercise or performance of any of their powers or duties hereunder." (Declaration of John M. Conlon dated Dec. 29, 2010 ("Conlon Decl.") ¶ 7 (quoting Indenture § 6.7(a)).) These fees and expenses are to be paid to BANA from the available funds prior to any distribution to holders of the Notes. (*Id.*) BANA has incurred $108,622.10 in fees and expenses related to this action and the liquidation of the Collateral, and requests that this amount be deducted from the Interpleader Stake prior to disbursement. (Reply Declaration of John M. Conlon dated Feb. 10, 2011 ¶ 7; Pl.'s Mem. at 12.) Morgan Stanley and Cede do not oppose the request for fees and expenses. (Conlon Decl. ¶ 11; Morgan Stanley Mem. at 7.) Accordingly, the Court grants BANA's request for fees and expenses as reasonable, and those fees and expenses shall be paid from the Interpleader Stake prior to any distribution.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion **[14]** is GRANTED. Pursuant to 28 U.S.C. §§ 1335 and 2361, BANA is discharged from all further liability and the Interpleader Defendants are permanently enjoined from all further actions with regard to the Interpleader Stake. BANA is awarded attorneys' fees and costs of $108,622.10 to be paid from the Interpleader Stake. 96.87% of the remainder shall be disbursed to the holders of the Class A-1LT-e Notes, with the remaining 3.13% to be disbursed to the holders of the Class A-1-a Notes. The Clerk of the Court is requested to enter judgment consistent with this Order.

SO ORDERED.

Dated: New York, New York
      June ⸻, 2011

                                              Richard J. Holwell
                                           United States District Judge